UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,                :
                                         :
                                         :    **ORDER**
         -against-                       :
                                         :    05-CR-541 (DLI)
JERRY BENOIT,                            :
                                         :
                  Defendant.             :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Defendant Jerry Benoit is charged with unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Before the court is defendant's motion to suppress several pre and post-arrest statements. For the reasons set forth below, defendant's motion to suppress is denied.

**FINDINGS OF FACT**

The court held a hearing on April 3, 2006, at which the government presented one witness, Police Officer Joseph Collora, a twelve-year veteran of the New York City Police Department assigned to the Anti-Crime Unit of the 77th Precinct in Brooklyn, N.Y. (Hr'g Tr. at 3–4.) The court finds P.O. Collora's testimony credible.

On or about June 23, 2005, the 77th precinct received a report of shots fired in the St. Marks Avenue area of Brooklyn. About two days later, P.O. Collora and his partner, dressed in plain clothes and displaying their shields on chains around their necks, drove to the area to investigate. (Hr'g Tr. at 4–5, 16.) When they arrived, they observed the defendant and another man on the sidewalk. As the officers approached them, P.O. Collora observed the defendant bend down. P.O. Collora's partner heard a gun "click or clang" against the sidewalk. (*Id*. at 5.) When P.O. Collora directed his flashlight to the ground, he observed a silver firearm on the sidewalk near the defendant.

(*Id*. at 4–5.) P.O. Collora immediately arrested the defendant and his companion. Both were transported to the 77th Precinct. (*Id*. at 6.)

Once at the precinct, defendant was placed in a cell and remained there between the hours of 1:00 and 7:00 a.m. and slept through most of the night. At approximately 1:10 a.m., the defendant indicated he wanted to speak to P.O. Collora and made several statements (collectively, "Pre-*Miranda* Statements"): "The gun was there, it was not his, it was somebody else's. He also stated . . . that he only had picked up the gun once."[1] (Hr'g Tr. at 9.) After defendant made these statements, and at various times during the 1:00 a.m. to 7:00 a.m. period, P.O. Collora removed the defendant from his cell to take him to the bathroom and fingerprint him and questioned defendant regarding his pedigree information. (*Id*. at 6–9, 22.)

At approximately 7:00 a.m., defendant was taken to an office where he was handcuffed to a chair. No one other than the defendant, Detective Siegel, and P.O. Collora was present. P.O. Collora testified that Detective Siegel advised defendant of his *Miranda* rights at that time. (Hr'g Tr. at 9–10, 25–26.) After indicating orally and in writing that he understood his rights,[2] defendant stated that he was not going to turn anyone in, and that he wanted to be returned to his cell (collectively, "Post-*Miranda* Statements").[3] (*Id*. at 11, 13.) Defendant's statements were not

---

[1] The Government's memorandum of law includes notice of the following additional pre-*Miranda* statements: "[E]veryone who hung out there knew the gun was there . . . the gun is not mine." (Gov't Mem. of Law at 4.)

[2] Defendant's written *Miranda* Rights Waiver was admitted into evidence as Government Exhibit No. 1. (Hr'g Tr. at 12.)

[3] The Government's memorandum of law includes notice of the following additional post *Miranda* statements: "I'm not getting anyone in trouble. Please can I go back to my cell, I'm already in trouble, I'm not supposed to be out of the state, I'm on probation for robbery." (Gov't Mem. of Law at 4.)

2

reduced to writing. (*Id*. at 30.) P.O. Collora testified that the defendant did not appear to be under the influence of drugs or alcohol and was never asked about his level of education nor about whether he suffered from cognitive difficulties. (*Id*. at 12, 26.) At the time he questioned the defendant, P.O. Collora knew defendant had open criminal cases in Connecticut and New York but never asked whether defendant was represented by counsel in either case. (*Id*. at 26–27.)

At the hearing, the government introduced certificates of the defendant's two previous felony convictions in the state of Connecticut, one for attempted robbery in the first degree and related charges, and another for possession of drugs. (Hr'g Tr. at 14–15.)

## CONCLUSIONS OF LAW

A.    *Pre-Miranda Statements*

Defendant moves to suppress his Pre-*Miranda* Statements because he claims he never made any such statements.[4] (Hr'g Tr. at 45.) In support of his motion, defendant points to the "screening sheet" completed by the District Attorney's Office ("D.A.'s Office"). (*Id*. at 45.) P.O. Collora testified that he never told the D.A.'s Office about defendant's Pre-*Miranda* Statements, and thus the "screening sheet" apparently fails to include them. Based upon this omission, defense counsel urges the court to discount as incredible P.O. Collora's testimony that defendant made the Pre-*Miranda* Statements. (*Id*.)

At the hearing, P.O. Collora testified that, in sum and substance, defendant made the following unprompted statements while still in his cell: that the gun had been there, it did not belong

---

[4] This argument was raised for the first time at the suppression hearing. In his motion papers, defense counsel challenges defendant's Post-*Miranda* Statements but fails to address defendant's Pre-*Miranda* Statements. (*See* Def.'s Notice of Mot. ¶ 1, *passim*; Def.'s Counsel Decl. ¶¶ 10–14, *passim*; Benoit Decl. ¶¶ 4–8, *passim*; Def.'s Reply Decl. ¶ 8, *passim*.)

3

to the defendant, and defendant had picked up the gun once. (Hr'g Tr. at 8–9.) Although P.O. Collora failed to notify the D.A.'s Office about these Pre-*Miranda* Statements, he memorialized them in his memo book shortly after defendant made them. (*Id*. at 24.) The court finds this testimony credible.

Pursuant to *Miranda v. Arizona*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Safeguards include advising a defendant of *Miranda* warnings when he is subjected to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Here, because there was a formal arrest, there is no question that defendant was in custody at the time he made his Pre-*Miranda* Statements. *See California v. Beheler*, 463 U.S. 1121, 1125 (1983) (defining "custody," *inter alia*, as a formal arrest). However, the defendant was not subjected to interrogation since P.O. Collora's uncontroverted testimony is that he did not ask the defendant a single question. *See U.S. v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (defining interrogation as an "inquiry conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought") (citing *Garner v. United States*, 424 U.S. 648, 657, 96 S. Ct. 1178, 1183, 47 L. Ed. 2d 370 (1976)). The statements were, therefore, spontaneous and not obtained in violation of defendant's Fifth Amendment rights. Accordingly, defendant's motion to suppress his Pre-*Miranda* Statements is denied.

B.  *Post-Miranda Statements*

Defendant contends that his Post-*Miranda* Statements should be suppressed because

defendant did not effect a valid waiver of his rights. Specifically, defendant argues that he was incapable of knowingly and intelligently waiving his *Miranda* rights because he "suffer[s] from [a] permanent brain injury caused by lead poisoning" that essentially prevented him from apprehending the consequences of waiving his *Miranda* rights. (Def.'s Counsel Decl. ¶¶ 11–13.)

The government contends that because defendant appeared to be in "normal physical and mental condition," was old enough to know what he was doing, spoke the same language as the detective who administered the warnings, and has experience with the criminal justice system, the court should find that defendant understood his rights and the consequences of his waiver. (Gov't Mem. of Law at 5–6.)

"To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *U.S. v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1140, 89 L. Ed. 2d 410 (1986)). "No single factor determines whether a confession is voluntary." *Id*. (citing *U.S. v. Bye*, 919 F.2d 6 (2d Cir. 1990)).

At the hearing, the government established that the defendant, who was twenty-three years old and apparently spoke English, was removed from his cell and taken to an office where P.O. Collora and Det. Siegel advised him of *Miranda* warnings. (Hr'g Tr. at 6, 11–12.) Defendant indicated, orally and in writing, that he understood each warning. Indeed, the government introduced a document entitled "Miranda Warnings" bearing defendant's initials after each warning and a check mark indicating that he understood every right and warning read to him. (Gov't Ex. 1.) The bottom of the document also bears defendant's signature. Although defendant, in his motion papers, claims

5

to suffer from cognitive difficulties that prevented him from understanding his rights and the consequences of a waiver of those rights, no such claim was made at the hearing and no evidence was introduced to support such a finding. Further, defendant does not dispute that *Miranda* warnings were timely given nor does he claim that his statements were physically coerced. *See United States v. Guarno*, 819 F.2d 28, 30 (2d Cir. 1987).

Based on the totality of the circumstances, the government has proven by a preponderance of the evidence that defendant understood his rights and the consequences of a waiver of those rights. *See Jaswal*, 47 F.3d at 542; *Bye*, 919 F.2d at 9 (holding that voluntariness assessment must be based on the totality of the circumstances). Therefore, this court finds that defendant's statements were made voluntarily and are admissible in evidence.

## CONCLUSION

For the reasons set forth above, defendant's motion to suppress is denied in its entirety.


DATED:	Brooklyn, New York
		May 10, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge